IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEMOYNE VENEY, #54152-037 | * | |
| Plaintiff, | * | |
| v | * | Civil Action No.  RDB-15-3965 |
| TAMERA LYNN FINE, | * | |
| MARK WALTER CROOKS, | * | |
| MANISHA GARNER, | * | |
| BRENDAN HURSON, | * | |
| ROBERT SPELKE, | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Pending is a *Bivens*[1] action filed by self-represented Plaintiff Lemoyne Veney, an inmate at Federal Correctional Institution-Morgantown. Veney claims Defendants violated his constitutional rights, and their actions amounted to fraud, misconduct, and gross misinterpretation of federal law. (ECF 1, p. 5).[2]  Veney brings this action against Defendants in their official and individual capacities and seeks $7 million in damages.  For reasons to follow, this case shall be DISMISSED.

Each Defendant was involved in Veney's criminal proceedings. Tamara Lynn Fine and Mark Walter Crooks are Assistant United States Attorneys who prosecuted Veney.  Brendan Hurson is an attorney in the Office of the Federal Public Defender who represented Veney during his criminal proceedings. Robert Spelke was Veney's counsel at sentencing. Manisha Garner is a United States Probation Officer.

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *see also* 28 U.S.C. § 1331.

[2] Veney does not specify what constitutional rights or federal law he believes were violated by Defendants.  His generally stated claims of fraud, misconduct, and "gross interpretation of law" lack factual and legal predicate.

Veney has requested and will be granted leave to proceed in forma pauperis. (ECF 2). As such, his claims are reviewed pursuant to 28 U.S.C. §1915A. This provision requires courts to screen civil actions brought by prisoners, and dismiss complaints which fail to state a claim upon which relief may be granted or seek monetary relief from a defendant or defendants immune from such relief. This Court will dismiss the Complaint pursuant to this standard.

## BACKGROUND

### A. PROCEDURAL HISTORY

On February 14, 2013, Veney pleaded guilty to bank fraud conspiracy and aggravated identity theft, violations of 18 U.S.C. §§ 1349 and 1028A. He was sentenced to a total term of 51 months of imprisonment and supervised release for a total term of five years, and ordered to pay restitution. *United States v. Veney, et al.,* Criminal Action No. RDB-11-691 (D. Md.).

On July 7, 2014, Veney filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255, raising claims of Sixth Amendment and due process violations. *Veney v. United States*, Civil Action No. RDB-14-2324 (D. Md.); related Criminal Action, *United States v. Veney*, *et al.*, RDB-11-691 (D. Md.). In the Motion to Vacate, Veney alleged Spelke provided ineffective assistance of counsel and Hurson deliberately withheld from him exculpatory information. The Government has filed a Response to the Motion, seeking denial and dismissal of the Motion as time-barred and for lack of merit.[3] *United States v. Veney*, *et al.*, Criminal Action No. RDB-11-691 (D. Md.) (ECF 134). In his Reply, Veney claims Crooks committed prosecutorial misconduct and violated his right to due process, which "led to the 'PSR [Pre-Sentencing Report] writer' and ultimately the District Court Judge to miscalculate the proper

---

[3] In the §2255 proceeding, the Government has submitted an affidavit executed by Spelke in which he attests that at no time did Veney direct him to file an appeal of his sentence or conviction. *See United States v. Veney, et al.,* Criminal Action No. RDB-11-691 (ECF 134-1). Spelke attests that he met with Veney to highlight the appeal waiver provisions of the plea agreement. *Id*; see also ECF 134-2 (plea agreement).

sentencing guideline ranges, as well as brought about an inapplicable conviction." (ECF 144, p. 2).  The Motion to Vacate remains under review.

### B. VENEY'S CLAIMS AGAINST DEFENDANTS

In this Complaint, Veney claims Hurson "rendered constitutionally deficient counsel," based on a "defective indictment." (ECF 1, pp. 5-6).  He claims Hurson failed to formulate a "defense strategy" and coerced him into unknowingly and unintelligently entering his plea.  *Id*. at 6.

Veney blames Robert Spelke, his sentencing counsel, for providing constitutionally deficient counsel by failing to object to the PSI [Pre-Sentencing Investigation Report], though he was aware of errors and "actual fraud committed by the government which was reflected in the plea agreement factual stipulation."  *Id*. at 10.  Veney claims he instructed Spelke to file an appeal on his behalf, but Spelke failed to do so.

Veney accuses Tamara Fine of prosecutorial misconduct. *Id*. at 6-7.  He faults Fine for summarily indicting him without conducting substantive investigation into the facts of his state criminal proceeding. He asserts Fine knowingly added a false statement of events in the indictment, and knowingly "misjoined" conduct, victims, and losses from unconnected activities that occurred in separate states during different time periods and with separate actors who never made any agreement to conspire. *Id*.

Veney claims Mark Crooks knowingly and deliberately withheld exculpatory evidence, including a recovered check, a bank statement, and investigative notes from government witness Detective Warren Brooks. *Id.* at 7-8. He also alleges Crooks deliberately withheld the identity and other information relating to the government's "mystery" codefendant, referred to a "John Doe, #1," and provided false statements and fraudulently prepared spreadsheets to give the

appearance of checks negotiated within the scope of the conspiracy. Veney claims Crooks deliberately "misjoined the actual federal bank fraud committed by the government's 'mystery' codefendant 'John Doe # 1" to him, even though Crooks knew there was no connection. *Id*. at 7. Veney claims Crook failed to alert this Court to errors in the PSI. *Id*. at 8.

Veney blames Manisha Garner for failing to properly compile his PSI Report, and claims she failed to conduct a genuine and independent investigation of the facts. Instead, Garner copied what was provided by the government, basing her sentencing recommendations "on her own misunderstanding of federal law." *Id*. at 9. Veney claims that Garner acknowledged there were errors in the Report, but informed him that she no longer had the file and he needed to contact his attorney concerning the errors. *Id*.

## DISCUSSION

In order to bring a *Bivens* action, a plaintiff must allege that a federal officer acted under federal law to deprive plaintiff of a constitutional right. *Bivens*, 403 U.S. at 389; *see also*, *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484–86 (1994); *Okoro v. Scibana*, 63 F. App'x. 182 (6th Cir. 2003). Veney does not allege that his attorneys, Burson or Spelke, were acting under color of law. Private counsel are not federal officers for the purposes of a *Bivens* action. *See Vermont v. Brillon* 556 U.S. 81 (2009); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (stating "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Hall v. Quillen*, 631 F.2d 1154, 1155–56 (4th Cir. 1980) (attorneys, including public defenders and attorneys appointed by the State, do not act under color of state law and are not state actors); *Cox v. Hellerstein*, 685 F.2d 1098 (9th Cir.1982) (affirming dismissal of *Bivens* action against an assistant federal defender for providing ineffective assistance because "[i]f a public defender

4

does not act under color of state law in representing an indigent defendant in a state criminal proceeding, it follows that a public defender does not act under color of federal law in performing the identical functions as a lawyer to an indigent defendant in a federal criminal proceeding"); *Anderson v. Sonenberg*, 111 F.3d 962 (D.C. Cir. 1997) ("[P]ublic defenders and other attorneys appointed to represent defendants in federal proceedings are not federal officials for purposes of *Bivens*."). Veney fails to state a claim against either Hurson or Spelke. Accordingly, the claims against Burson and Spelke will be dismissed.

Further, principles of immunity apply to the federal actors sued in this proceeding. The Supreme Court has held that prosecutors, when acting within the scope of their duties, have absolute immunity under 42 U.S.C. §1983 from damages liability for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Lyles v. Sparks*, 79 F.3d 372, 376-377, n. 4 (4th Cir. 1996) (stating that in *Bivens* actions prosecutors enjoy absolute immunity for their actions intimately associated with the judicial phase of the criminal process). Absolute immunity is afforded prosecutors when they are acting "within the advocate's role." *Dababnah v. Keller-Burnside*, 208 F.3d 467, 470 (2000) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993)). [4]

In *Imbler,* the Court stated that a prosecutor, acting within the scope of his or her duties in initiating and prosecuting a case, has the same absolute immunity from liability for damages for alleged violation of another's constitutional right, notwithstanding that such immunity leaves the genuinely wronged defendant without civil redress against a prosecutor whose malicious or

---

[4] The reasoning behind this principle is that a prosecutor performs his or her functions "under the watchful eye of the judge and in the shadow of the ever-present possibility of judge-imposed sanctions." *Dababnah v. Keller–Burnside,* 208 F.3d 467, 471 (4th Cir. 2000) (quoting *Marrero v. City of Hialeah*, 625 F.2d 499, 509 (5th Cir. 1980)). In this way, attaching absolute immunity to these functions thus does not protect the prosecutor at the expense of individual rights and liberties. *Dababnah*, 208 F.3d at 471. Instances of prosecutorial abuse are subject to criminal and professional sanction. *Id.* at 470.

dishonest action deprives him of liberty. *Imbler*, 424 U.S. 427. The Court explained that if the prosecutor had only a qualified immunity, the threat of litigation would undermine performance of the prosecutor's duties because not only would public trust of the prosecutor's office suffer if he or she were constrained in making decisions by potential liability for damages, but, if the prosecutor could be made to answer in court each time he was charged with wrongdoing, attention would be diverted from the duty of enforcing criminal laws. *Id*. Noting that prosecutors often act under strict constraints of time and a prosecutor may makes decisions that engender colorable claims of constitutional deprivation, the Court reasoned that defending such decisions could impose unique and intolerable burdens upon a prosecutor. *Id*. at 426. Therefore, the Court concluded that permitting only qualified immunity to a prosecutor could have an adverse effect upon the functioning of the criminal justice system. *Id*. at 426-27.

To be sure, absolute prosecutorial immunity may not apply when a prosecutor is engaged in other tasks, such as investigative or administrative assignments. *Id*. at 30; *Harlow v. Fitzgerald*, 457 U.S. 800, 811 n. 16 (1982); *Van De Kamp v. Goldstein*, 555 U.S. 335, 342-343 (2009). Therefore, when asked to determine whether a prosecutor is entitled to absolute immunity, a court examines "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). Preparation of the indictment is clearly within the ambit of the protection contemplated by absolute judicial immunity. *See Kalina v. Fletcher*, 522 U.S. 118 (1997) (upholding absolute immunity for prosecutor's actions related to the preparation and filing of charging documents); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (holding that a prosecutor would be entitled to absolute immunity for "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been

made"). Veney's claims against Crooks and Fine directly challenge their preparation of the indictment and their actions at trial and sentencing, all of which are prosecutorial functions clearly within the judicial phase of the criminal process. Crooks and Fine were working within the scope of their duties in initiating and pursuing a criminal prosecution against Veney, and they are within the ambit of absolute immunity. Consequently, the claims against Fine and Crooks shall be dismissed with prejudice.

Similarly, probation officers such Defendant Garner is also entitled to immunity from suit. *See Gant v. United States Probation Office*, 994 F.Supp. 729, 733 (S.D. W.Va. 1998) ("One function for which probation officers uniformly have been granted absolute immunity is the preparation of presentence reports") (collecting cases). As the *Gant* court explained, "probation officers act 'as an arm of the court' when amassing and providing the court enough information to meaningfully perform its sentencing obligations." *Id*. (quoting *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987)).  Accordingly, the claims against Garner shall be dismissed.

## CONCLUSION

For these reasons, this case will be dismissed. A separate Order follows.

January 8, 2016                                  ____/s/_____
Date                                                          RICHARD D. BENNETT
                                                                UNITED STATES DISTRICT JUDGE